UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| WILLIAM HENRY CLAPP, | Case No. 18-cv-07269-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [FIFTH] AMENDED COMPLAINT[1]** |
| CITY AND COUNTY OF SAN FRANCISCO, | Re: ECF No. 49 |
| Defendant. | |

## INTRODUCTION

Pro se plaintiff William H. Clapp alleges that in November 2016, he was leaving a restaurant in San Francisco's Mission District, when he was confronted by a group of five to seven individuals who began yelling and advancing on him. In response, Mr. Clapp took out both pepper spray and a stun gun from his pockets and "sparked" the stun gun. Officers from the San Francisco Police Department arrived and ordered Mr. Clapp to drop his weapons. Mr. Clapp did so. Mr. Clapp alleges that he was then pulled from behind and fell onto the sidewalk and suffered injuries.

---

[1] While Mr. Clapp has not been numbering his successive complaints, by the court's count, he has filed six complaints altogether: ECF No. 1 (his original complaint), ECF No. 39 (what would be his first amended complaint), ECF No. 40 (what would be his second amended complaint), ECF No. 41 (what would be his third amended complaint), ECF No. 42 (what would be his fourth amended complaint), and his operative complaint ECF No. 48 (what would be his fifth amended complaint) ("5AC"). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 18-cv-07269-LB

Mr. Clapp alleges that he was then handcuffed and injected with a sedative, which rendered him unconscious until he woke up some time later at San Francisco General Hospital in restraints.

The San Francisco District Attorney's Office charged Mr. Clapp with misdemeanor brandishing for the November 2016 incident and had a restraining order issued against him. In June 2017, Mr. Clapp was arrested for violating the restraining order for failing to turn in two "collector guns." A court ordered him on an evening "house arrest/curfew" from 10:00 p.m. to 6:00 a.m. and barred him from consuming any alcohol in any public place. In November 2017, the brandishing charges were dropped, and the curfew restrictions were lifted.

Mr. Clapp now brings this lawsuit against the City and County of San Francisco ("CCSF"), alleging that CCSF violated his constitutional rights. Mr. Clapp brings claims for "False Arrest/ False Imprisonment, Excessive Use of Force & Malicious Prosecution . . . Conspiracy, Gross Negligence, & Intentional Infliction of Emotional Distress."[2] Mr. Clapp does not name any individual police officer or prosecutor as a defendant. CCSF moves to dismiss Mr. Clapp's complaint.[3]

The court held a hearing on June 6, 2019 and now grants CCSF's motion to dismiss. The dismissal is without prejudice, i.e., the court extends Mr. Clapp one chance to file an amended complaint. Mr. Clapp must file an amended complaint that addresses the deficiencies the court identified in this order within 21 days (i.e., by June 28, 2019). If he does not do so, the court will dismiss Mr. Clapp's claims with prejudice and close this case.

---

[2] 5AC – ECF No. 48 at 2 (¶ 3.1); *see also id.* at 3 (¶ 3.2).

Mr. Clapp states that his claims "include, but are not necessarily limited to" the claims listed above. *Id.* at 2 (¶ 3.1). The court explains for Mr. Clapp's benefit that his complaint must identify the claims he is bringing. Fed. R. Civ. P. 8(a)(2). He therefore may not use an "include, but are not necessarily limited to" disclaimer to bring claims that he does not identify in his complaint.

[3] CCSF Mot. to Dismiss – ECF No. 49.

# STATEMENT[4]

## 1. The Inciting Incident

On the evening of November 29, 2016, Mr. Clapp was on a first date at a restaurant in San Francisco's Mission District, where he had dinner and three cocktails over two-and-a-quarter hours.[5] (Mr. Clapp makes a point of alleging that his date was "well known at the restaurant" and had given him a false name and "had committed bank card fraud against him during their +2 hour dinner engagement."[6]) Mr. Clapp left the restaurant at approximately 11:15 p.m.[7]

At about 11:20 p.m., Mr. Clapp secured some gear on the rear luggage rack of his motorcycle, when he noticed that a group of five to seven people had assembled outside of the front entrance of the restaurant he had just left.[8] One of the people was his dinner date.[9] Mr. Clapp does not plead the names or identities of any of these five to seven individuals (including his dinner date).[10]

This group originally was 30 to 35 feet away from Mr. Clapp.[11] Mr. Clapp alleges that the group then "began advancing toward [him]," with two "lead" individuals on either side.[12] Mr. Clapp alleges that there was a lot of yelling, including, "'You are not allowed to leave'!!!"[13] Mr. Clapp asked a passerby what was going on, and the passerby responded "I do not know."[14] Mr. Clapp yelled for someone to call the police.[15] Mr. Clapp then took out pepper spray and a stun gun

---

[4] Unless otherwise noted, the facts recited in the Statement are allegations from the 5AC.

[5] 5AC – ECF No. 48 at 3 (¶ 4.1.1), 9 (¶ 5.2).

[6] *Id.* at 4 (¶ 4.1.2).

[7] *Id.* at 3 (¶ 4.1.1).

[8] *Id.* (¶ 4.1.2).

[9] *Id.* at 4 (¶ 4.1.2).

[10] *See* 5AC – ECF No. 48.

[11] *Id.* at 4 (¶ 4.1.3).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

ORDER – No. 18-cv-07269-LB 3

from his pockets.[16] Mr. Clapp alleges that he did not "spark" his stun gun until the two "lead" individuals from this group had advanced some 25 feet and were about five to ten feet away from him.[17] Once Mr. Clapp "sparked" his stun gun, the group's "assault" against him "immediately ended."[18]

### 2. The Police's Arrival and Actions in Response to the Inciting Incident

Officers from the San Francisco Police Department arrived and ordered Mr. Clapp to drop the pepper spray and stun gun.[19] Mr. Clapp immediately did so.[20] Mr. Clapp alleges that he was then pulled backward and downward from behind.[21] Mr. Clapp lost his balance and fell onto a concrete sidewalk and incurred multiple injuries, including a concussion and injuries to his shoulder, back, and left wrist.[22]

Mr. Clapp was handcuffed while lying on the sidewalk.[23] He then was asked to sign something, to which he responded, "I have nothing to say without the presence of legal counsel."[24]

Mr. Clapp alleges that his jacket and shirt then were torn open and that he was injected with a sedative that rendered him unconscious.[25] Mr. Clapp woke up some time later at San Francisco General Hospital in gurney restraints.[26] After he was released from his restraints, Mr. Clapp got

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 5 (¶ 4.2.1).
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at 6 (¶ 4.2.3).
[26] *Id.*

ORDER – No. 18-cv-07269-LB  4

dressed and left the hospital at around 4:00 a.m.[27] Mr. Clapp found in his pants pocket a citation for misdemeanor brandishing.[28]

### 3. Additional Incidents

In January 2017, a restraining order was issued against Mr. Clapp related to his November 2016 arrest.[29] Mr. Clapp alleges that the restraining order was issued at the request or direction of the San Francisco District Attorney's Office.[30]

Neither Mr. Clapp nor CCSF provides additional details regarding this restraining order. It appears that the order may have called for Mr. Clapp turn over all firearms (and may have imposed other requirements).[31] On June 20, 2017, the "California DOJ" arrested Mr. Clapp without a warrant for violating the restraining order by failing to turn in two registered "collector guns."[32] (Mr. Clapp alleges that this arrest "was also directly responsible for a second serious fall that took place the following morning which resulted in severe neck injuries," but he does not explain how this arrest led to a fall or neck injuries and does not identify any person or entity that allegedly caused that fall.[33])

Mr. Clapp was scheduled to go to trial on June 21, 2017 on the brandishing charge arising out of the November 2016 incident.[34] As a result of Mr. Clapp's arrest on June 20, a mistrial was declared pending a new trial date.[35] As a result of either his new arrest or the mistrial, a court placed Mr. Clapp on a "house arrest/curfew" from 10:00 p.m. to 6:00 a.m. every day and barred

---

[27] *Id.* (¶ 4.2.4).
[28] *Id.*
[29] *Id.* at 6–7 (¶¶ 4.3.1–4.3.2).
[30] *Id.* at 6 (¶ 4.3.1).
[31] *See id.* at 7 (¶ 4.3.2).
[32] *Id.* at 6 (¶ 4.3), 7 (¶ 4.3.2).
[33] *See id.* at 7 (¶ 4.3.3).
[34] *See id.*
[35] *Id.* at 8 (¶ 4.3.4).

him from consuming alcoholic beverages in any public place.[36] This restriction remained in place for five months, until the brandishing charge was dismissed in November 2017.[37]

Mr. Clapp alleges that it took eighteen months before the "property" that was confiscated in connection with his June 2017 arrest was returned to him.[38] Mr. Clapp alleges that the "property" that was confiscated from him in connection with his November 2016 arrest has yet to be returned.[39] Mr. Clapp also claims that the police reports relating to his November 2016 arrest that CCSF attached to its case-management statement in this case[40] are "materially different" from the copy he received in a Superior Court hearing held in January 2017, although he does not explain (beyond conclusory allegations) how the reports differ.[41]

**4. Pre-Litigation Claims Under the Government Claims Act**

Mr. Clapp does not allege in his complaint that he presented a pre-litigation claim to CCSF pursuant to California's Government Claims Act ("GCA").

CCSF attached to its motion to dismiss a GCA claim that Mr. Clapp presented on May 26, 2017.[42] Mr. Clapp's GCA claim does not provide any information regarding the basis of any claim he might bring. Instead, Mr. Clapp wrote in his GCA claim that:

> This filing with the San Francisco Controller's office is being made at this time purely for the purposes of protecting my legal rights under relevant law (as both state and federal Statutes of Limitations) in the event formal legal action is undertaken. Further, as there have been no formal discussions/meetings with legal counsel to date, where possible causes of action have yet to be vetted/determined,

---

[36] *Id.*

[37] *Id.*; *see also id.* at 6 (¶ 4.2.4).

[38] *Id.* at 9 (¶ 5.4). Mr. Clapp does not specify what that property was.

[39] *Id.* Again, Mr. Clapp does not specify what that property was.

[40] CCSF Case Mgmt. Statement Ex. H (police reports) – ECF No. 27-9.

[41] 5AC – ECF No. 48 at 9 (¶ 5.3).

[42] Clapp GCA Cl. – ECF No. 49-2. The court may take judicial notice of GCA claims on a motion to dismiss because "[s]uch a document is a matter of public record and is necessarily relied on by [p]laintiffs in bringing their state law claims[.]" *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1256 (E.D. Cal. 2014).

> there has been no decision made (of any time) as to any possible formal course of action or legal court filing. As such, considering these facts, it is not possible at this time to determine either potential specific causes of action or damages as may either be mutually agreed to or awarded but such may be substantial.[43]

On June 15, 2017, CCSF sent Mr. Clapp a notice of insufficiency, explaining that his GCA claim did not provide all of the information required under California Government Code § 910,[44] which requires claimants to include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," among other things. Mr. Clapp does not contend that he responded to CCSF's notice of insufficiency or that he filed any additional or supplemental GCA claims.[45]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

---

[43] Clapp GCA Cl. – ECF No. 49-2 at 3–4.

[44] CCSF Notice of Insufficiency – ECF No. 49-3.

[45] *See* Clapp Opp'n – ECF No. 51 at 3–6.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations [in a pro se complaint,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) (internal citations and quotations omitted); *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

## ANALYSIS

### 1. Constitutional Claims

#### 1.1 Governing Law

Claims against state actors like CCSF for violations of constitutional rights are actionable through 42 U.S.C. § 1983.

##### 1.1.1 Violation of a constitutional right

First, to plead a constitutional claim against CCSF, Mr. Clapp must plead an underlying violation of a constitutional right. *Plumeau v. Sch. Dist. # 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Reading his complaint broadly, Mr. Clapp brings constitutional claims for false arrest/false imprisonment, excessive force, malicious prosecution, and conspiracy to violate his constitutional rights.[46]

For a constitutional claim of false arrest or false imprisonment under 42 U.S.C. § 1983, a plaintiff must show that the defendants did not have probable cause to arrest him. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)).

For a constitutional claim of excessive force under 42 U.S.C. § 1983, a plaintiff must show that the defendants used force that was unreasonable in light of the totality of the circumstances, including "(1) how severe the crime at issue is, (2) whether the [plaintiff] posed an immediate threat to the safety of the officers or others, and (3) whether the [plaintiff] was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 443, 441 (9th Cir. 2011) (en banc) (citing *Doerle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001)).

For a constitutional claim of malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show that the prosecution "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's[] favor; (2) was brought without probable cause; . . . (3) was initiated with malice," and (4) was brought "for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)).

For a constitutional claim of conspiracy under 42 U.S.C. § 1983, a plaintiff must show that (1) there was "an agreement or meeting of the minds to violate the [plaintiff's] constitutional rights" and (2) "an[] actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citing cases).

---

[46] 5AC – ECF No. 48 at 2–3 (¶¶ 3.1–3.2). Mr. Clapp's claims for gross negligence and intentional infliction of emotional distress are not constitutional claims. *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996) ("[G]ross negligence, in and of itself, is not unconstitutional."); *Kocol v. United States*, No. CV 13-3511 ABC (PJWx), 2014 WL 12586440, at *4 (C.D. Cal. Apr. 7, 2014) ("IIED is not the basis of a constitutional claim[.]").

### 1.1.2 Government policy

Second, in addition to pleading an underlying violation of a constitutional right, to plead a constitutional claim against a government entity like CCSF (as opposed to an individual, such as an individual police officer), Mr. Clapp must plead that CCSF maintained a policy or custom that resulted that violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *See, e.g.*, *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To plead a claim against a government entity, a plaintiff must show that (1) he possessed a constitutional right and was deprived of that right, (2) the government entity had a policy, (3) the policy amounts to deliberate indifference to his constitutional rights, and (4) the policy was the moving force behind the constitutional violation. *Plumeau*, 130 F.3d at 438.

The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

**1.2 Application**

**1.2.1 Violation of a constitutional right**

Mr. Clapp does not plead an underlying violation of a constitutional right with respect to his claims for false arrest/false imprisonment, malicious prosecution, or conspiracy.[47]

Mr. Clapp does not plead a claim for false arrest or false imprisonment arising out of the November 2016 incident because the police had probable cause to arrest him. By Mr. Clapp's own admission, when the police arrived on the scene, he was brandishing pepper spray and "sparking" a stun gun at people who were five to ten feet away from him. The responding police officers — having witnessed first-hand Mr. Clapp brandishing his weapons at a group of people — had probable cause to arrest him. *See, e.g.*, Cal. Penal Code § 22810(g)(1) (criminalizing the use of tear-gas weapons except in self-defense); *People v. Hamilton*, 61 Cal. App. 4th 149, 155 (1998) ("[t]he word 'use' in the context of weapon statutes uniformly and unambiguously means the

---

[47] The court declines at this juncture to decide whether Mr. Clapp pleads an underlying violation of a constitutional right with respect to his claim for excessive force relating to the November 2016 incident.

Mr. Clapp may be able to plead a claim of excessive force based on his allegations that he was (1) pulled from behind and (2) injected with a sedative. *Cf. Sheehan v. Bay Area Rapid Transit*, No. 14-cv-03156-LB, 2016 WL 777784, at *6 (N.D. Cal. Feb. 29, 2016) (depending on the totality of the circumstances, officer forcefully taking plaintiff to the ground may constitute excessive force); *Rogers v. Grijalva*, No. 1:09-cv-01298-SKO, 2011 WL 837172, at *4 (E.D. Cal. Mar. 7, 2011) (depending on the totality of the circumstances, state hospital worker injecting plaintiff with a sedative may constitute excessive force). The court notes that his current allegations are somewhat conclusory and lacking in detail. For example, he does not allege that a police officer pulled him down to the ground. Instead, he alleges only that he was pulled and that he then lost his balance and fell, but he does not allege whether he was pulled to the ground, or whether (conversely) he was pulled with only a little force and then lost balance himself. The court need not decide whether his current allegations are sufficient to plead a claim, however, because he currently names only CCSF — and not any individual police officers — as a defendant, and (as discussed below) he cannot plead any constitutional claim against CCSF unless it had a government policy that was the moving force behind the constitutional violation, which he does not plead here.

If he wishes, Mr. Clapp may amend his complaint to name individual police officers as defendants and add additional factual allegations about his excessive-force claim. (CCSF has filed on the public docket the police reports relating to the November 2016 incident, which contain the responding officers' names. CCSF Case Mgmt. Statement Ex. H (police reports) – ECF No. 27-9. Mr. Clapp confirmed at the June 6, 2019 hearing that he has these police reports and the officers' names.)

Mr. Clapp does not plead a violation of a constitutional right with respect to his claim for excessive force relating to the June 2017 incident, as he does not allege any facts about the force that anyone used.

ORDER – No. 18-cv-07269-LB 11

intentional display of the weapon in a menacing manner" in addition to the firing or discharging of the weapon).[48] Mr. Clapp no doubt believes he was acting in self-defense. But probable cause turns on the facts and circumstances within the officers' knowledge, not Mr. Clapp's, and the facts and circumstances that Mr. Clapp pleads were within the officers' knowledge at the time —that Mr. Clapp was brandishing his weapons at a group of people — established probable cause to arrest him. *Cf. Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("[P]robable cause requires only that those facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense. . . . The mere existence of some evidence that could suggest self-defense does not negate probable cause.") (internal quotation marks and ellipsis omitted) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)); *Blankenhorn v. City of Orange*, 485 F.3d 463, 475 (9th Cir. 2007) ("Ultimately, . . . our inquiry is not whether [plaintiff] *was* [committing an offense]. Rather, it is whether a reasonable officer had probable cause to think he could have been.") (emphasis in original) (citing cases); *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) (citing additional cases holding that an arrestee's claim of self-defense does not necessarily negate probable cause to make an arrest). Where, as here, the facts in a plaintiff's complaint show that that his arrest was supported by probable cause, the plaintiff cannot plead a constitutional false-arrest or false-imprisonment claim, and his claims are subject to dismissal. *Fayer v. Vaughn*, 649 F.3d 1061, 1065 (9th Cir. 2011) (affirming dismissal of claims at

---

[48] "Tear gas," as used in Penal Code § 22810, includes pepper spray. *See, e.g.*, *People v. Brian P. (In re Brian P.)*, No. B255259, 2015 WL 3416888, at *2 (Cal. Ct. App. May 28, 2015).

  As a note, it does not matter for present purposes whether Mr. Clapp was charged with a violation of Penal Code § 22810(g)(1) or was charged under some other section of the Penal Code. *Cf. Blankenhorn*, 485 F.3d at 473. "'Probable cause may exist for an arrest for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003)). "'As long as the officers had some reasonable basis to believe [Mr. Clapp] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances.'" *Cf. id.* (internal brackets omitted) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

the pleading stage where "the facts in the amended complaint show that [plaintiff]'s arrest was supported by probable cause").[49]

Mr. Clapp's claim for malicious prosecution fails for the same reason, namely, that the facts in his complaint show that his prosecution was supported by probable cause. Additionally, Mr. Clapp does not cognizably plead that anyone prosecuted him with malice or did so for the purpose of denying him equal protection or another specific constitutional right.

Mr. Clapp does not plead a claim for conspiracy, because, among other things, he does not cognizably allege that there was an agreement or meeting of the minds between any parties to violate his constitutional rights. *Cf. Woodrum*, 866 F.2d at 1126 ("allegations of conspiracy must be supported by material facts, not merely conclusory statements") (citation omitted).

### 1.2.2 Government policy

In any event, even if Mr. Clapp pleaded an underlying violation of his constitutional rights, his claims against CCSF fail because he does not allege that CCSF had a policy that amounted to deliberate indifference to his constitutional rights, much less that CCSF's policy was the moving force behind any violation of his rights. Mr. Clapp does not name any individual police officer or prosecutor as a defendant, only CCSF as an entity. CCSF cannot be held liable simply because it employed a person who may have violated Mr. Clapp's rights, and Mr. Clapp does not meet the standard for pleading a claim for constitutional violations against CCSF.

## 2. State-Law Claims

### 2.1 Governing Law

#### 2.1.1 Government Claims Act

With some exceptions not relevant here, the California Government Claims Act requires a party seeking to recover money damages from a public entity or its employees to present a claim

---

[49] Mr. Clapp does not plead a claim of false arrest or false imprisonment arising out of the June 2017 incident either. Mr. Clapp acknowledges that he was violating a restraining order and the reason the "California DOJ" arrested him then was for that violation. Additionally, allegations against the "California DOJ" do not plead a claim against CCSF, because the California Department of Justice is not a division of CCSF.

within six months after accrual of the claim to the entity before filing suit in court. Cal. Gov't Code §§ 911.2(a), 945.4; *see, e.g.*, *Doe v. Whittington*, No. 5:18-cv-02581-EJD, 2019 WL 1436983, at *3 (N.D. Cal. Mar. 29, 2019) (GCA presentment requirement applies to state-law claims for false arrest and false imprisonment); *Gimbel v. Crescent City Police Dep't*, No. C 07-0113 MJJ, 2007 WL 9735064, at *4–5 (N.D. Cal. June 22, 2007) (same re state-law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress); *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2015 WL 9319485, at *4 (N.D. Cal. Dec. 23, 2015) (same re state-law claims for conspiracy); *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *5 (N.D. Cal. May 2, 2017) (same re state-law claims for false imprisonment, negligence, and intentional infliction of emotional distress).[50]

A GCA claim must include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," among other things. Cal. Gov't Code § 910. As the California Supreme Court has held, the purpose of the GCA claims statutes are "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *DiCampli-Mintz v. Cty. of Santa Clara*, 55 Cal. 4th 983, 991 (2012). "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." *Id.* "[T]he intent of the [GCA] is to confine potential governmental liability to rigidly delineated circumstances." *Id.* (citations omitted). "The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity." *Id.* (citations omitted).

---

[50] Mr. Clapp correctly notes that federal constitutional claims are not subject to California's GCA. *Amatrone v. Champion*, No. 15-cv-01356-JST, 2015 WL 5591614, at *8 n.6 (N.D. Cal. Sept. 23, 2015) (citing *Barsch v. O'Toole*, No. C 07-00615 SI, 2007 WL 1795750, at *2 (N.D. Cal. June 21, 2007) (citing *Harding v. Galceran*, 889 F.2d 906 (9th Cir. 1989))). Mr. Clapp's federal constitutional claims are independently dismissible, however (as discussed above).

### 2.1.2 Underlying claims

For a California state-law claim of false arrest or false imprisonment, a plaintiff must show that the defendants (1) intentionally confined the plaintiff without his consent, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (citing *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).[51] Police officers are privileged to make lawful arrests, including arrests of a person who has committed a public offense in the officers' presence. *Blankenhorn*, 485 F.3d at 486–87 (citing Cal. Penal Code § 847(b)).

For a California state-law claim of malicious prosecution, a plaintiff must show that the prosecution "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's[] favor; (2) was brought without probable cause; and (3) was initiated with malice." *Mills*, 921 F.3d at 1169 (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989)).

For a California state-law claim of gross negligence, a plaintiff must show that the defendant owed the plaintiff a duty, breached that duty, that the breach caused the plaintiff injury, and that the defendant engaged in "extreme conduct" that "demonstrate[d] either a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'" *Sampson v. Ukiah Valley Med. Ctr.*, No. 15-cv-00160-WHO, 2015 WL 13661551, at *5 (N.D. Cal. Sept. 10, 2015) (quoting *City of Santa Barbara v. Super. Ct.*, 41 Cal. 4th 747, 754 (2007)).

For a California state-law claim of intentional infliction of emotional distress, a plaintiff must show "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Tekle*, 511 F.3d at 855 (quoting *Davidson v. City of Westminster*, 32 Cal 3d 197, 209 (1982)).

---

[51] Under California law, "[f]alse arrest is not a different tort; it is merely 'one way of committing a false imprisonment.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Collins v. City and Cty. of San Francisco*, 50 Cal. App. 3d 671, 673 (1975)).

A plaintiff cannot plead a standalone California state-law claim for civil conspiracy, because "[u]nder California law, 'there is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom.'" *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 390 (2017) (quoting *Prakashpalan v. Engstron, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1136 (2014)).

### 2.2 Application

#### 2.2.1 Government Claims Act

Mr. Clapp's claims against CCSF are barred by his failure to comply with the GCA.

Mr. Clapp's GCA claim did not provide CCSF sufficient information to enable it to adequately investigate his claims and to settle them without the expense of litigation. Instead, Mr. Clapp expressly declined to provide CCSF with notice of what legal claims he might bring and stated that he was filing his GCA claim — which provided no details about the circumstances surrounding his claim — solely to preserve his right to file a lawsuit and impose upon CCSF the expense of litigation.[52] This flies in the face of the purposes of the GCA. *Cf. DiCampli-Mintz*, 55 Cal. 4th at 991. Mr. Clapp's failure to comply with the requirement of the GCA warrants dismissal of his state-law claims. *Cf., e.g.*, *Ramachandran v. City of Los Angeles*, 359 F. Supp. 3d 801, 817–18 (N.D. Cal. 2019) (dismissing state-law claims where "[GCA] notices contain no information that would have permitted the city to investigate the bases for [plaintiff]'s claim").

Mr. Clapp argues that he was unable to provide a more complete GCA claim in May 2017 because the underlying proceedings against him for brandishing and violating the restraining order against him had not yet been fully resolved.[53] This argument fails for multiple reasons.

First, Mr. Clapp cannot condition his filing a GCA claim on the underlying proceedings against him fully resolving. *See* Cal. Gov't Code § 945.3 (pending criminal charges toll the statute

---

[52] Clapp GCA Notice – ECF No. 49-2 at 3 ("This filing with the San Francisco Controller's office is being made at this time purely for the purposes of protecting my legal rights under relevant law (as both state and federal Statutes of Limitations) in the event formal legal action is undertaken. . . . [W]here possible causes of action have yet to be vetted/determined, there has been no decision made (of any type) as to the possible formal course of action or legal court filing.").

[53] Clapp Opp'n – ECF No. 51 at 5–6.

ORDER – No. 18-cv-07269-LB      16

of limitations for bringing a civil lawsuit but do not extend the time to file a GCA claim). The court confronted a similar situation in *Doe v. Whittington*, 2019 WL 1436983. There, the plaintiff was arrested in June 2016 for alleged extortion and released from custody the next day. *Id.* at *2, 4. The criminal case against her continued until October 2017, when the court found her to be factually innocent. *Id.* at *2. The court held that the plaintiff's claims for false arrest and false imprisonment accrued for the purposes of the GCA at the time of her arrest and release from custody, respectively. *Id.* at *4 (citing *Mohlmann v. City of Burbank*, 179 Cal. App. 3d 1037, 1041 n.1 (1986); *Torres v. Dep't of Corr. & Rehab.*, 217 Cal. App. 4th 844, 848 (2013); *Collins v. Cty. of Los Angeles*, 241 Cal. App. 2d 451, 457 (1966)). Even though the underlying criminal case against her continued for over a year, the plaintiff's failure to file GCA claims within six months of her arrest rendered her claims untimely and therefore barred. *Id.* at *4–5. Likewise, the fact that the underlying proceedings against Mr. Clapp may not have been fully resolved in May 2017 does not excuse him from filing a proper GCA claim then.

Second, Mr. Clapp acknowledges that the underlying proceedings against him were fully resolved by March 2018.[54] Even assuming he could not file a GCA claim until then, he still should have filed a complete and proper GCA claim within six months of when the proceedings fully resolved, i.e., by September 2018. Cal. Gov't Code § 911.2(a) (GCA claims must be filed "not later than six months after the accrual of the cause of action"). Mr. Clapp does not allege that he filed a proper GCA claim before September 2018. His failure to allege that he filed a proper GCA claim renders his state-law claims subject to dismissal. *See, e.g.*, *Heyward*, 2015 WL 9319485, at *4 ("'Where compliance with the [GCA] is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general [dismissal].'") (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995)).

Mr. Clapp also argues that California Government Code § 815.2 authorizes him to bring his state-law claims.[55] This argument fails too. Government Code § 815.2 provides that, "[w]ith

---

[54] *Id.* at 6.

[55] *Id.* at 7, 12, 19–20.

ORDER – No. 18-cv-07269-LB 17

certain exceptions, public entities and public employees are liable for their torts to the same extent as private parties." *Turner v. State*, 232 Cal. App. 3d 883, 888 (1991) (citing Cal. Gov't Code §§ 815.2, 820). "However, before a complaint may be filed against a governmental entity[,] such entity must be presented with a claim in the form required by [the GCA]." *Id.* (citing Cal. Gov't Code §§ 910, 945.4). Contrary to Mr. Clapp's suggestion, Government Code § 815.2 does not supersede the GCA and does not excuse Mr. Clapp's failure to present a timely and proper GCA notice. *See id.*

### 2.2.2 Underlying claims

In any event, even if Mr. Clapp had complied with the GCA, his state-law claims against CCSF fail because he does not plead the elements of any of his claims.

Mr. Clapp's state-law claims for false arrest, false imprisonment, and malicious prosecution fail for the same reason that his analogous constitutional claims do, namely, there was probable cause and (with respect to his malicious-prosecution claim) he does not cognizably allege malice.

Mr. Clapp's state-law claim for gross negligence fails because he does not allege that CCSF engaged in "extreme conduct" that demonstrated either a "want of even scant care" or "an extreme departure from the ordinary standard of conduct" that breached a duty that it owed to him.

Mr. Clapp's state-law claim for intentional infliction of emotional distress fails because he does not allege that CCSF engaged in extreme and outrageous conduct with the intent to cause, or reckless disregard for the probability of causing, emotional distress or that he suffered severe or extreme emotional distress caused by CCSF's conduct.

Mr. Clapp's state-law claim for conspiracy fails because conspiracy is not a separate tort in California.

## CONCLUSION

The court grants CCSF's motion to dismiss.

While Mr. Clapp has filed six complaints in this case, this is the first time that the court has ruled on a motion to dismiss. The court therefore declines to dismiss the case with prejudice and

extends Mr. Clapp one chance to file an amended complaint. *Cf. United Healthcare*, 848 F.3d at 1183.

Mr. Clapp must file any amended complaint within 21 days of the date of this order (i.e., by June 28, 2019). Mr. Clapp must clearly specify what claims he is bringing and, separately for each claim, must specify whether he is bringing the claim under the federal constitution, under state law, or both. *See* Fed. R. Civ. P. 8(a)(2). To the extent that he repleads any state-law claims, he must allege how he complied with the requirements of the GCA or allege circumstances excusing compliance. *Cf. Heyward*, 2015 WL 9319485, at *4.[56]

If Mr. Clapp does not timely file an amended complaint that addresses the deficiencies the court identified in this order, the court will dismiss Mr. Clapp's claims with prejudice and close this case.

**IT IS SO ORDERED.**

Dated: June 7, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

[56] The court said at the June 6, 2019 hearing that it was dismissing Mr. Clapp's state-law claims with prejudice. Upon reflection, the court will dismiss Mr. Clapp's state-law claims without prejudice and give him a last opportunity to plead that he timely complied with the GCA. If he did not timely comply with the GCA, the court will dismiss his state-law claims with prejudice.